UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| | ) 97 CR 165 |
| | ) |
| vs. | ) Hon Andrea R. Wood |
| | ) |
| EDMUND J LOPINSKI, JR. | ) |
| | ) |

**DEFENDANT'S REPLY TO THE UNITED STATES OF AMERICA'S RESPONSE TO DEFENDANT'S MOTION FOR LEAVE TO REINSTATE HIS VERIFIED PETITION TO VACATE JUDGMENT**

NOW COMES DEFENDANT-PETITIONER EDMUND J. LOPINSKI, J ("Lopinski" or "Defendant") by and through his attorneys, Calvita J. Frederick & Associates, and in reply to the response of the United States of America's ("USA" or "the Government") claims made at a hearing in this matter on Jan. 24, 2018 and/or in their response to Defendant's motion for leave to reinstate his verified petition to vacate judgment, states as follows:

**Background and History**

On April 7, 1998 Defendant entered a plea agreement in the instant case as to Counts 5 and 6. Defendant purportedly plead guilty to Counts 5 and 6 of the Indictment, however there was no Count 6 contained in the Indictment, and the fax referenced in Count 5 was not sent to the defendant. The applicable fax in Count 5 was requested and sent to "Edmund *Lipinski*" a Vice President and Director of defendant's company. Defendant has acquired a certified copy of this fax cover page from the district court files. [Ex. 2]. A copy of a related civil complaint cover page is attached as Ex. 3 and names this Edmund *Lipinski*. Defendant did not execute any documents sent to Edmund *Lipinski* concerning this count. [Ex. 2 Pg. 5]. Also, Defendant did not execute the amended purchase order for the boat, which was addressed in the plea agreement

Page **1** of **10**

under Count 6. Defendant has obtained certified copies from the District Courts Office evidencing this fact. [Ex. 2, Final Pg.].

Defendant contends that he was pressured into signing the plea agreement by his Public Defender and that the Agreement entered was not what had been discussed and agreed upon. Communications sent by Lopinski to Rodriguez the night before the plea agreement was to be entered were included in the court files and obtained by Defendant when he examined same in the past two weeks.

After the plea agreement was signed but before Defendant was convicted and sentenced to prison, Defendant's counsel Rodriguez withdrew his Appearance as Defendant's counsel and a panel attorney was appointed for the limited purpose of Defendant withdrawing his guilty plea. After more than six months of continuances, the motion to withdraw the guilty plea was denied and a loss hearing was held. It was at this loss hearing that the USA failed to respond to the Defendant's expert witness rebuttal report prepared by Earl Hopewell of American Express Tax and Business Services. [R. 150 at 39-44]. AUSA Joel Bertocchi verbally stated that USA's Expert Witness agreed with this rebuttal and promised to provide additional information regarding it. This information was never provided to the Court, the Defendant nor his attorney, despite specific requests. [R. 150 at 4]. The USA's response was critical to Defendant's case and would have allowed Earl Hopewell and his firm to complete their procedures, which ultimately proved Defendant's innocence of any intent or actuality of misappropriating from the Public Limited Partnerships managed by his company. [R.150 at 14-22]. Defendant went to prison. In 2010, after serving time and probation, Defendant filed a motion for leave to vacate judgment, based upon his allegations of fraud upon the Court. The motion was heard by Judge Zagel.

During that 2011 hearing, Judge Zagel made many comments, including: "I'm going to enter an order dismissing Lopinski's Fraud on the Court Petition with leave to reinstate" [R. 149 at 8] "whenever appropriate proof is found" [R. 149 at 5].

Judge Zagel, also stated, "there is a common law that says, you know, you can come in and prove that a conviction was obtained by fraud pretty much without restriction in the interests of justice, and that thing I think he's probably entitled to". [R. 149 at 8-9]. To further emphasize his point, Judge Zagel went on to say "… there is no statute of limitations bar that I can see". [R. 149 at pg. 5], and, "whatever clock there is that may be running I'm going to stop". [R. 149 at pg. 8]

**The January 24, 2018 Hearing**

This matter was initially before this Honorable Court on January 24, 2018 on Lopinski's Motion for Leave to Reinstate His Verified Petition to Vacate Judgment. At that time, USA stated **"**he (Lopinski) needs to file a 2255 petition to get this case **going.** Judge Zagel said exactly that back in 2011". [Exhibit 9/R. 162, pg. 6-7]. Prior to the instant motion, Lopinski had filed a similar motion before Judge Zagel in 2011. [R. # 142].

The USA misquoted Judge Zagel. During the January 24, 2018 appearance before this Court, the Government further stated "It's through a civil petition where we can get in clear, articulated form exactly what it is and everything that it is that the defendant is asking for in relief. I don't think we have that based on the petition to reinstate that's currently in front of your Honor"**.** [Exhibit 9/R. 162 at 12-13].

**ARGUMENT**

What Judge Zagel actually said in 2011 was **"**I'm going to enter an order dismissing Lopinski's Fraud on the Court Petition with leave to reinstate**"** [R. 149 at 8] "whenever appropriate proof is found" [R. 149 at 5]**.**

Nowhere in the record or transcripts of the court proceeding did Judge Zagel state that Lopinski "needs to file a 2255 petition". Had Judge Zagel's intention been to cause a 2255 to be filed, he would have dismissed defendant's motion to vacate and/or granted the USA's verified petition to dismiss for lack of jurisdiction as the government had requested in their motion [R. 141], and not allowed for a reinstatement.

Additionally, when last before this Court, the USA stated **"**There is a policy, a concept of finality in federal criminal cases. This case, a judgment was entered back in the 90's off a plea agreement…That ends the criminal case". [Exhibit 9/R. 162 at 7]. LOPINSKI disagrees.

The instant filing by LOPINSKI is a Motion for Leave to Reinstate His Petition to Vacate Judgment based upon an alleged fraud on the Court, an action which can be entered at any time and is without a statute of limitations.**[1]**

---

[1] "Fraud upon the court" has been defined by the 7th Circuit Court of Appeals to "embrace that species of fraud which does, or attempts to, defile the court itself, or is a fraud perpetrated by officers of the court so that the judicial machinery cannot perform in the usual manner its impartial task of adjudging cases that are presented for adjudication." Kenner v. C.I. 387 F.3d 689 (1968); 7 Moore's Federal Practice, 2d ed., p. 512, ¶ 60.23. The 7th Circuit further stated "a decision produced by fraud upon the court is not in essence a decision at all, and never becomes final.

During the 2011 hearing before Judge Zagel, he stated, "there is a common law that says, you know, you can come in and prove that a conviction was obtained by fraud pretty much without restriction in the interests of justice, and that thing I think he's probably entitled to". [R. 149 at 8-9]. To further emphasize his point, Judge Zagel went on to say "… there is no statute of limitations bar that I can see", [R. 149 at pg. 5], and, "whatever clock there is that may be running I'm going to stop". [R. 149 at pg. 8].

This motion is to reinstate the Verified Petition to Vacate Judgments Obtained by Fraud in the Captioned Criminal Case, R 137 filed by Defendant on 12/15/2010 and which Judge Zagel gave leave to reinstate. [R 148].

That Verified Petition is both clear and articulate in describing a Fraud on the Court of massive proportions in this criminal case (and the related civil case). Numerous parties schemed to alter the records of defendant's company to cause it to appear that defendant misappropriated funds of the Public Limited Partnerships he managed. These false and altered records were delivered by an Attorney to the USA in Judge Zagel's Courtroom. [R 139 Ex. 5]. One of the schemers, Jeffrey McReynold's, is also prominently mentioned in the USA's expert witness report of the Kroll Associates. [R.139 Ex. 6 at 1].

The defendant remains clear in his disclosure that the USA's expert witness then issued a report which was laden with errors and falsely claimed that defendant was guilty of deriving $9.1 million of excess funds from the Public Partnerships. [R. 139 Ex. 6 at 1]. This is not the first time the USA have utilized a false expert witness report to support their claim. As noted in Exhibit 8, a criminal case involving false expert witness reporting was dismissed.

Defendant's expert pointed out the errors in the USA's expert witness report. [R.150 at 39-44. In response, the USA verbally agreed with defendant's expert but failed to produce either a written acknowledgement for the record or the "additional information" which was promised. The defendant has been attempting to obtain this information for the last 20 years to no avail. [R 150 at 24-37]. In the interim, the defendant's expert witness has issued an updated report proving defendant's innocence of misappropriating any funds of the Public Partnerships. [R. 150 at 14-22].

Defendant's request of this Court is simple: That the USA be required to provide the additional information they promised in 1998 and that they respond in writing to both of

Page **4** of **10**

defendant's expert witness reports. By doing so, the accuracy of the Court record for this case will finally be established and the defendant will be cleared of the false charges of misappropriations from the Public Partnerships, as he has claimed since the onset of this case.

### The February 26 USA Response

The USA filed their response to Defendant's motion for leave to reinstate his motion to vacate judgment on Feb. 26, 2018. [R 165]. Missing was the defendant's Acknowledgement of Rights and Voluntary Plea, which this Court required the USA to attach to their response [Exhibit 9/R.162 at 10-11]. Although the government refers to the agreement and seems to cite from it, they fail and refuse to provide a copy of it as required by this Court.

Defendant has obtained a Certified unsigned copy from the District Court Clerk and has attached it as Exhibit 4 hereto. No signed copy of the Acknowledgement of Rights and Voluntary Plea was found in the physical Court file. Defendant will not note herein the "goose chase" required to find the court file and the surprise when he showed up with the appropriate reference to gain access to it. As noted in Exhibit 4 and Exhibit 5 (Certified Copy of Fax from Lopinski to Sergio Rodriguez), the defendant did not and would not plea to a misappriation of Public Limited Partnerships, as charged in the Indictment.

In their response to Defendant's motion for leave to reinstate, the USA has, again, requested the Court to dismiss Defendant's petition under the grounds that the Court lacks the jurisdiction to hear this case. This is the second time the USA has attempted this argument. On March 14, 2011, the USA filed a similar motion in this case [R.141], and instead of granting the government's motion to dismiss, the Court dismissed the Defendant's verified fraud petition with leave to reinstate it. [R. 149 at 8].

The USA streamlined and misstated their background comments to fit the argument raised in their response. Defendant did not tender a "Blind Plea" agreement to Counts 5 and 6, as the USA claims. [R. 165 at 1]. Defendant would never and did not agree to or execute any document stipulating that he was guilty of any intentions to misappropriate from the Public Limited Partnerships. The Acknowledgment of Rights and Voluntary Plea, [Exhibit 4], does not admit to the charges in the Indictment, [Exhibit 1/R. 1], that the defendant-petitioner **"misappropriated and converted funds and assets of the limited partnerships to his own**

**personal benefit…"** [Exhibit 1/R.1 at 4]. The night before this Voluntary Acknowledgment was delivered to the Court, Defendant sent a fax to his attorney making it clear that he would not agree to any such accusation [Exhibit 5].

## THE VOLUNTARY PLEA AGREEMENT
## REFERS TO COUNT 6 WHICH DOES NOT EXIST

The Indictment in the District Court's records at [Exhibit 1/R.1] does not have a Count 6 as stipulated in the Acknowledgement of Rights and Voluntary Plea [Exhibit 4]. On March 5, 2018, defendant-petitioner searched the District Court's physical documents file in the Circuit Clerk's office and could not locate this Count 6. [Exhibit 1/R.1 at pg. 21-22].

## THE VOLUNTARY PLEA AGREEMENT
## REFERS TO COUNT 5 AND THE CAUSING OF A FAX TO BE SENT
## CONCERNING AN ALTERED AIRCRAFT AGREEMENT

The applicable fax referenced in Count 5 was requested and sent to "Edmund *Lipinski*" a Vice President and Director of defendant's company. Defendant has acquired a certified copy of this fax cover page and the altered aircraft agreement from the district court files. [Ex. 2]. A copy of the related civil complaint cover page is attached as Ex. 3 and names this Edmund *Lipinski*. Defendant did not execute any documents sent to Edmund *Lipinski* concerning this count [Exhibit 2 Pg. 5].

## A Fed. R. Crim. P. 33(a) and (b)(1) ARGUMENT IS NOT PROPER HERE

The USA cites Fed. R. Crim. P. 33(a) and (b)(1) and alleges that there is a time limitation of three years for defendant to file a motion grounded on "newly discovered evidence".

This citation is inapplicable to any argument against Defendant's Verified Petition. The Defendant has filed a petition alleging fraud on the Court which has no such time limitations. A petition to set aside a judgment obtained by fraud on a court may be brought at any time, irrespective of any prior proceeding, including appeal, 2255, and *habeus corpus*. It is based on

the inherent power of the Judiciary and is not subject to abrogation or diminished by Congress, or the Executive by any means. This inherent power is beyond question. *Universal Oil Products v. Root Refining Co.,* 328 U.S. 575, 580, (1946); *Hazel-Atlas Glass Company v. Hartford Empire Co.,* 322 U.S. 238, 246 (1944), *US v. Johnson,* 327 F.3d 554, 561 (7th Cir 2003) (quoting *Winkler v. Eli Lilly & Co.,* 101 F.3d 1196, 1200 n.2 (7th Cir. 1996).

Even Federal Rule of Civil Procedure 60(d) (3) acknowledges that a federal court's inherent power to set aside a judgment for fraud on the court cannot be limited. Inherent power means just that. To exercise that inherent power, the court must have jurisdiction to exercise it. Inherent power grants inherent jurisdiction to exercise that inherent power. And *vice versa.* Neither inherent power nor inherent jurisdiction to exercise that power may be taken away.

The USA is also ignoring previous determinations in this case. During the 2011 hearing Judge Zagel stated, **"there is a common law that says, you know, you can come in and prove that a conviction was obtained by fraud pretty much without restriction in the interests of justice, and that thing I think he's probably entitled to". [**R 149 at 8-9].

Judge Zagel went on to state **"**Since there is no statute of limitations bar that I can see". [R149 at 5]. Judge Zagel additionally stated that, **"**whatever clock there is that may be running I'm going to stop". [R 149 at 8]. Thus, the government's statute of limitations argument based upon Fed. R. Crim. P. 33(a) and (b)(1), is without merit.

## A 28 USC 2255 IS NOT PROPER HERE

The USA then argues "that defendants petition was nothing more than a successive 2255 petition that is not allowed under 28 USC 2255". In raising this argument, the USA failed to include the fact that the Court dismissed the petition with a leave to reinstate, R. 148, "whenever actual proof is found" R. 149 at 5**.** That is exactly what the defendant is requesting with his instant Motion to Reinstate R. 150 and moreover, Defendant has attached the appropriate proof as required by Judge Zagel. R. 150 at 14-22.

The government continues its argument with stating that a defendant can only get post-conviction relief thru 28 USC 2255. Once again, the USA is attempting to portray Defendant's Verified Petition as a successive 2255 and cites *Melton v. United States,* 359 F.3d 855, 857 (7th

Cir. 2004)*; see also, e.g., United States v. Boyd,* 591 F.3d 953, 955 (7th Cir. 2010)*; and United States v. Lloyd*, 398 F.3d 978, 980 (7th Cir. 2005) in support thereof.

None of these cases support USA's argument, nor are applicable to this case and are, in fact, inapposite to defendant's verified petition.

In the *Melton* case, a 2255 Motion was filed for a reduction in a lengthy sentence due to ineffective assistance of counsel. When that motion was dismissed, Melton filed the same claim under a different title. This case is not even remotely similar to defendant's case. Melton was a "person in custody" as defined in the 2255 rules, and defendant is not. Melton duplicated his original 2255 filing under *audita querla* which was abolished a long time ago for federal civil proceedings and was defined as a writ available to a judgment debtor. There is no duplication of filing by defendant herein, as his verified petition was filed for the first time and he was given leave to reinstate it when the appropriate proof was found. The government quoted the *Melton* case as stating: it doesn't matter what the "prisoner plasters on the cover" a 2255 motion is a 2255 motion no matter what". Defendant herein is not a "prisoner" and his case is for a real and documented case of fraud on the court which is clearly defined in the statutes. The exhibits attached to the verified petition describes a real fraud of alteration, concealment and destruction of documents during an USA investigation. [R. 139 Ex. 4 Sworn Affidavit of Chief Paralegal]. This includes warning the company employees to "watch what they say" because of an upcoming visit by the Securities and Exchange Commission Attorneys after defendant's voluntary resignation and during this investigative stage. [R 139 Exhibit 3, Employee Affidavits-Kevin Freely, 5/3/94 Pg. 3].

In the *Boyd* case, a 2255 motion was filed alleging that the sentence in his case was a violation of *Apprendi*. When this was denied, Boyd filed a 35 (a) motion alleging the same violation, "a wolf in sheep's clothing" Judge Posner said, rather than a *bona fide* Rule 35 motion to "correct an illegal sentence at any time [or] imposed in an illegal manner within the time frame provided herein for the reduction in sentence." The *Boyd* case was not a case alleging fraud on the Court, nor did *Boyd* assert that, and it bore no similarity to defendant's case.

*Lloyd* made a plea of *rachmanis* premised on a change in the Federal Sentencing Guidelines to which the Commission had given retroactivity and on which Lloyd pinned his hopes for a reduction of his 5 life sentences for violations of USA's drug laws to something he could live with. Lloyd's plea was denied because Lloyd had filed a *prior* 2255 petition, and

therefore his present one, although styled otherwise by Lloyd, was a successive such petition, which required the Appellate Court's prior approval under 2255, which it chose not to give, so the District Court had no jurisdiction to entertain his plea. Clearly the *Lloyd case*, (where the defendant was incarcerated and attempting to reduce a substantial sentence), provides no basis for not investigating the fraud on the court petition filed by defendant herein and for sanctioning it. Defendant's motion is an action entirely different from *Lloyd*. Unlike *Lloyd,* defendant has completely served his sentence. He is not seeking anything from this Court with respect to it. Rather Defendant is seeking this Court to Vacate the Judgment and order an appropriate sanction for a fraud on the court. *Lloyd* sought no such thing.

The government is attempting to recast defendant's verified petition as a successive 2255 motion when, in fact, it is not. A 2255 motion is designed for a person seeking relief from Federal custody which is inapplicable to this defendant

The government is asserting nothing less than that this Court does not have the inherent jurisdiction and power to investigate and sanction for an alleged fraud on the Court. The Court should not be so immolated.

### *Conclusion*

The defendant has presented a petition alleging fraud on the Court of massive proportions. The exhibits included with the petition and this reply include sworn statements of an attorney and a chief-paralegal, numerous employee statements, a false summary of damages created by the schemers, and the USA's expert witness report, which falsely charged defendant of deriving excess reimbursements from the Public Limited Partnerships managed by his company.

A massive scheme was perpetrated by officers of defendant's company and by others to fraudulently alter his company's records to cause it to appear that he was misappropriating funds of the Public Limited Partnerships. Once these fraudulent alterations were done, these same men covered their tracks by conducting massive documentation destruction, during the time a Government investigation was ongoing. During these investigations, these same men were also guilty of multiple counts of lying during depositions to the Securities and Exchange Commission Investigators and other Investigative Parties [IE: See Ex. 7-Excerpt from Group Exhibit 1 filed in the related civil case 92C3289].

These bad men had a common objective. To permanently remove defendant from his company to derive unencumbered access to its funds and assets and those of the Public Limited Partnerships. Once this access was obtained, they derived substantial monetary rewards, previously disallowed under the provisions of the Public Partnership Contracts.

The false summary of damages created by these schemers were provided to the USA in defendant's case. An attorney and Officer of the Court hand delivered them to an AUSA during a hearing before Judge Zagel. Another of the schemers was prominently disclosed in the subsequent USA's Expert Witness Report of the Kroll Associates, which falsely charged defendant with deriving $9.1 million of excess reimbursements from the Public Limited Partnerships.

This same false summary was used in the related civil case (92C3289). When Judge David Coar dismissed that action, the schemers reverted to state court and made the same allegations in case 95L17447. After a lengthy trial, these allegations were proven false by Attorneys for Price Waterhouse (except for a minor error Price Waterhouse made and accepted responsibility for).

This fraud by the schemers had far reaching effects. Approximately 36,000 Public Limited Partners and 300 shareholders of defendant's company were monetarily damaged by the schemers in their attack on the funds and assets available for their pilferage. The defendant was falsely charged and convicted of an intention to misappropriate funds, when in fact no such misappropriations were ever intended or occurred. The defendant has filed proof of his innocence, herein via his Expert Witness Reports, and requests that the USA finally respond to them so that Defendant's innocence can be established.

Wherefore Defendant respectfully prays that this Honorable Court allow Defendant's motion to proceed and permit the examination and investigation of the claims made herein, and for other and further relief as this Court deems just and proper.

Respectfully Submitted,

/s/Calvita J. Frederick

Calvita J. Frederick
Attorney for Edmund J. Lopinski, Jr.

Calvita J Frederick
Attorney at Law
Post Office Box 802976
Chicago, IL. 60680-2976
(312) 421-5544
ARDC# 6184001