1
2

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

3   UNITED STATES OF AMERICA,                )
                                             )
4                  Plaintiff,                )
                                             )
5             -vs-                           )  No. 97 CR 165
                                             )
6   EDMUND J. LOPINSKI, JR.,                 )  Chicago, Illinois
                                             )  April 5, 2018
7                  Defendants.               )  10:15 a.m.

8

9

TRANSCRIPT OF PROCEEDINGS
BEFORE THE HONORABLE ANDREA R. WOOD

10  APPEARANCES:

11  For the Government:     MR. PAUL H. TZUR
                           ASSISTANT UNITED STATES ATTORNEY
12                         219 South Dearborn Street
                           Chicago, Illinois  60604
13

14
    For the Defendant:     CALVITA J. FREDERICK & ASSOCIATES
15                         Post Office Box 802976
                           Chicago, Illinois  60680
16                         BY:  MS. CALVITA J. FREDERICK

17

18

19

20

21

22

COLETTE M. KUEMMETH, CSR, RMR, FCRR
OFFICIAL COURT REPORTER
219 South Dearborn Street
Room 1928
Chicago, Illinois  60604
(312) 554-8931

23

24

25

1     (Proceedings heard in open court:)

2          THE CLERK:  97 CR 165, U.S.A. versus Lopinski.

3          MR. TZUR:  Good morning, your Honor.  Paul Tzur for

4     the United States.

5          MS. FREDERICK:  Good morning, your Honor.  Calvita

6     Frederick on behalf of defendant.

7          THE DEFENDANT:  Good morning, your Honor.  Edmund

8     Lopinski.

9          THE COURT:  Okay.  Good morning.  I've taken a look

10    at the reply that was submitted on behalf of Mr. Lopinski.

11    So I have a couple of questions for the parties.

12          Let me start with Mr. Tzur.  So the argument that's

13    being made by Ms. Frederick in her filing is focused on

14    basically saying that the Government's narrow focus on habeas

15    remedies is too narrow, and that they are focusing on an

16    acknowledgement by Judge Zagel of a more general common law,

17    for want of a better way of describing it, right to come into

18    court and to basically take the position that a conviction

19    was not proper.

20          I don't really have a response from the Government

21    with respect to that position that this is not really

22    something that falls under the habeas rubric, rather, this is

23    just something that just falls under Mr. Lopinski's more

24    general right to come in and say there has been a fraud on

25    the court, his conviction was procured as a result of such

1    fraud and should be overturned.

2    MR. TZUR:  So the defendant is I think again
3    conflating substance and procedure.  As Judge Zagel said,
4    Judge Zagel is right, he does have that right to come in and
5    claim a fraud on the court.  The problem is that this isn't
6    the proper courtroom, this isn't the proper case in which to
7    do that.  That's because of procedure.

8    The criminal rules very expressly and explicitly
9    set out when a party can come back and reopen a criminal case
10   or bring a motion in a criminal case.  That's under Rule 33.
11   The time there has long since expired.  So the only other way
12   in which he can satisfy the claims that he wants to bring is
13   through a habeas petition.  And in the federal system that's
14   under 2255.

15   I actually think that the defense is misstating
16   what Judge Zagel was talking about back in 2011.  I went back
17   through the transcript of that proceeding.  It's docket entry
18   149 on the docket.  And Judge Zagel, everything that he was
19   talking about was in the context of a 2255 proceeding.  And I
20   can point your Honor to a number of places where he talked
21   about that.  At the very bottom -- and I can wait for you if
22   want to bring up a copy or -- I didn't bring another copy for
23   your Honor.

24   THE COURT:  I have a copy.

25   MR. TZUR:  I direct you to beginning at the bottom

1    of page 3 of docket entry 149, Judge Zagel says he wants to
2    talk about what his inclination is, and then it goes on to
3    page 4.  He says he has some doubt as to whether this case,
4    the motion allegations made can actually be made in this
5    case, which was long since terminated.

6           Then if you scroll down to line 11 on page 4:  "The
7    one actual statutory exemption from 2255 preclusion, and that
8    is you can always come to the Court and say I'm innocent and
9    can prove that I'm innocent, they got the wrong man, you can
10   do that at any time.  You can do multiple habeas cases on
11   that, and you can do multiple 2255s."

12          He's talking about a 2255 petition there.  Judge
13   Zagel was exactly right.  Mr. Lopinski can come back in and
14   try to prove that he is actually innocent of the crime in the
15   context of a habeas petition.  That's exactly what Judge
16   Zagel was talking about.

17          Keeps going on, page 4 to page 5, that carryover
18   paragraph:  "Most of what I," Judge Zagel, "see here is
19   something that may be establishable before Judge Hibbler --"
20   which -- who had one of the civil matters "-- if there are
21   not rules that preclude that, or they could possibly be
22   established in an independent civil action.  I," Judge Zagel,
23   "don't think they belong in this case, the criminal case."

24          Again, Judge Zagel indicating -- not indicating,
25   saying expressly he sees an opportunity if Mr. Lopinski can

1    bring evidence to make the motion that he wants to make but
2    not in this criminal matter.

3              Again, on page 5, beginning at line 15:  "Since
4    there is no statute of limitations bar that I can see, and
5    since these are claims made and definitive proof does not
6    attach, obviously some further discovery is going to be
7    required, but I don't think it ought to be made in this
8    case."

9              Once again, Judge Zagel referencing this case, the
10   criminal matter, vis-a-vis a separate habeas petition.

11             And then finally I direct your Honor's attention to
12   line 7 on page 7:  "The only jurisdiction I have in this case
13   should Mr. Lopinski win after all is said and done and proved
14   that he somehow -- the judgment was procured by fraud, the
15   relief he gets in a 2255 is vacation from conviction."

16             I don't disagree that Judge Zagel on pages 8 and 9
17   said what he said as quoted repeatedly by the defense in
18   their reply brief, but those lines have to be read in context
19   with what Judge Zagel was talking about through the entirety
20   of the rest of that relatively short proceeding in 2011,
21   October 2011, as laid out in docket entry 149.

22             So the Government's primary position is Judge Zagel
23   had it right, he was talking about a 2255 proceeding.  There
24   is another way to read what Judge Zagel was talking about,
25   and it's the way that the defense says, that the defense

1    actually has a right, according to the defense's view of what

2    Judge Zagel said, to bring this case, to bring the relief

3    sought in this criminal matter.

4        If that's what Judge Zagel actually meant, Judge

5    Zagel was wrong.  And I don't mean to besmirch his name, I

6    actually think he was right, he was talking about 2255.  But

7    in the event that he's talking about bringing this relief in

8    this criminal matter, Judge Zagel was wrong.

9        The real problem there is that a statement by a

10    judge about the judge's view of the law doesn't vest a party

11    with any particular right.  And that's the problem with what

12    the defense is -- how the defense is relying on what Judge

13    Zagel said at pages 8 and 9 of the transcript.

14        I can give you an example.  Let's suppose the

15    government brought a prosecution for bank robbery.  The case

16    went to trial in front of a jury, the jury convicted the

17    defendant on a 2113(a) bank robbery, one-count bank robbery.

18    On post-conviction relief, the judge looks at the record and

19    decides that -- the judge understands 2113 to require that

20    the money that was stolen at the time of the bank robbery be

21    in a vault that's located in a building that's ten stories

22    tall, just a wild hypothetical, that that judge understands

23    2113 to require that the money be placed in a certain height

24    building.  That's not what the law is.  The judge's

25    misunderstanding of 2113 in that instance wouldn't vest the

1    defendant in some right that's not otherwise present in the
2    statute.  It would be reversible error.

3         And so the same applies here.  If Judge Zagel
4    actually thought that the proper way to bring what
5    Mr. Lopinski wants to bring is to bring this motion again in
6    the criminal matter, he's wrong, and that doesn't vest
7    Mr. Lopinski with a right to suddenly bring that motion.
8    It's reversible.

9         Again, I don't think that's what Judge Zagel meant.
10   But even if you read Judge Zagel to mean what the defendants
11   want you to understand Judge Zagel to have meant, then it's
12   wrong and it doesn't create a right for him.

13        Just the Government's position on their points.

14        THE COURT:  So the Government's position is that
15   the habeas statute creates the vehicle for raising the
16   interest that was discussed in front of Judge Zagel, and
17   Judge Zagel actually was acknowledging that in his discussion
18   on the record.

19        MR. TZUR:  Absolutely.  Could I also make a couple
20   clerical clarifications to what the defense argued in their
21   reply?

22        THE COURT:  Go ahead.

23        MR. TZUR:  One, there was this talk about there not
24   being a Count 6 to the indictment.  There is a Count 6.  I
25   have no idea why the docketed entry on the docket doesn't

1   include the page for Count 6.

2         I'm turning over a copy from the Government's

3   files --

4         THE COURT:  You can hand it to Enjoli.

5         MR. TZUR:  -- of the complete indictment with Count

6   6.  One thing to note on the version that's on the docket is

7   that the last page, which on the docket is Count 5, doesn't

8   have a signature block on it, which is a pretty clear

9   indication that something is missing, and it is Count 6.

10        The other way that we know that there was a Count 6

11  is to take a look at the plea colloquy.

12        THE COURT:  He reads from it.  Judge Zagel reads

13  from Count 6.

14        MR. TZUR:  Yes.  In multiple places in the plea

15  colloquy.

16        The other thing I want to make clear, the defense

17  repeatedly talks about how the defendant entered a plea

18  agreement.  That is just not the case.  If you read the plea

19  colloquy, when defense counsel started that colloquy, he

20  explained to Judge Zagel:  "It was going to be --" I'm

21  quoting from line -- beginning at line 9 at docket entry 41

22  of page 2:  "It's going to be a plea without an agreement

23  with the Government."

24        He goes on to say:  "What I've just handed up

25  through your clerk is an acknowledgement of rights and

1    voluntary plea that we," the defense, "have gone over with

2    our client in terms of what he," Mr. Lopinski, "is going to

3    be pleading guilty to and the rights that he," Mr. Lopinski,

4    "is waiving that the Judge will be going over with him."

5            In other words, there was never any agreement

6    between the parties.  So this idea that -- I just think it's

7    wrong that the defense keeps talking about how there was a

8    plea agreement and that the parties entered a plea agreement.

9    It's just not accurate.  It was a blind plea.  It was a

10   voluntary plea by Mr. Lopinski where Mr. Rodriguez, his

11   attorney at the time, prepared a document that ended up not

12   being signed for Judge Zagel to reference as he was going

13   through the acknowledgement of rights that Mr. Lopinski was

14   giving up.

15           THE COURT:  I did review the plea colloquy to see

16   what happened there.

17           MR. TZUR:  Thank you, Judge.

18           THE COURT:  Was there another point of

19   clarification, or was that it?

20           MR. TZUR:  I think those are the only two.  Give me

21   one moment, your Honor.

22           No.  That's it.

23           THE COURT:  And then just procedurally, as I was

24   trying to get my head around what happened, I appreciate that

25   you weren't on the case but you've obviously looked through

1    the record, there was a motion to vacate the plea that was

2    made prior to sentencing.  Is that correct?

3            MR. TZUR:  Correct.

4            THE COURT:  Was that a written motion or an oral

5    motion, and is the substance of it somewhere indicated on the

6    docket, to your knowledge?

7            MR. TZUR:  If I may have a moment.

8        (Brief pause.)

9            MR. TZUR:  I'm trying to think of anything that I

10   have sitting in this thick stack of papers that might have an

11   answer to that.

12           THE COURT:  I'll ask defense counsel as well.

13           MR. TZUR:  And I'm sorry I don't have an answer

14   more readily available for your Honor.  Offhand, I don't

15   remember the answer.

16           What I do know is that the motion was made, whether

17   orally or in writing I don't know, and that Judge Zagel ruled

18   on that motion and denied the motion prior to the sentencing

19   in the case.

20           THE COURT:  Do you know whether there is anything

21   on the docket that reflects the substance of that ruling?

22   Was that an oral ruling for which I would have to try to

23   track down a transcript, or is there an order?  I didn't see

24   anything substantive on the docket that reflected the basis

25   on which that motion was denied.

1      MR. TZUR:  I believe that was an oral ruling, I

2   believe that there is a transcript, I believe that I've seen

3   the transcript.  So -- I didn't see it today.  I wasn't

4   looking for it admittedly.  So I actually think that it is a

5   docket entry on the docket as a transcript.  It's most likely

6   not going to be in chronological order, it's not going to be

7   at the minute entry when the judge denied the motion, but I

8   think that transcript is available.

9      And I also think that the Seventh Circuit discussed

10  that motion and the denial of the withdrawal in its opinion

11  affirming Judge Zagel's -- affirming everything Judge Zagel

12  did on appeal.  I think that was back in 1999 or 2000.

13      THE COURT:  Thank you.

14      Ms. Frederick, do you know whether there was a

15  written motion, or was it just an oral request to vacate the

16  plea at that time?

17      MS. FREDERICK:  I do not know.

18      THE DEFENDANT:  It was a written motion submitted

19  by Thomas Huyck.  I was appointed a panel attorney to

20  withdraw the motion itself.

21      THE COURT:  That was because you or your counsel

22  had indicated to -- was it Judge Coar at the time?  Whoever

23  it was, we're going back a ways, that you wanted to raise the

24  argument, and so your federal defender attorney withdrew at

25  that point.

1        THE DEFENDANT:  He was dismissed and the panel

2    attorney was appointed.

3        MR. TZUR:  That would have been Judge Zagel as

4    well, your Honor.  Judge Zagel had the 97 CR criminal case.

5        THE COURT:  Oh, he had the criminal case as well.

6    Why did I think that it was transferred to Judge Zagel from

7    somebody else?

8        MR. TZUR:  I think that was a parallel civil action

9    regarding funds that were -- that parties were trying to

10   recoup.  Maybe even the United States was trying to recoup

11   through restitution.

12       THE COURT:  So Judge Zagel had the case from start

13   to finish, the CR case.

14       MR. TZUR:  Correct.  My understanding is, yes.

15       THE COURT:  I don't think this incriminates

16   Mr. Lopinski in any way:  Is that your recollection?  Were

17   you always in front of Judge Zagel when you came to court?

18       THE DEFENDANT:  I always remember Judge Zagel, yes.

19   My initial plea and my whole proceeding was Judge Zagel.

20       THE COURT:  Okay.  That's helpful.

21       Ms. Frederick, my next question is for you, because

22   I'm trying to understand the substance of your argument.

23   Putting aside the objections that the Government has raised

24   to the procedure for the moment on the substance, I'm trying

25   to understand the merits of your fraud on the court claim.

1        Who is defrauded here, I guess is what I'm trying

2  to understand.  Because it sounds like the fraud that you are

3  pointing to is that the Government prepared a false or

4  inadequate expert report in connection with the prosecution,

5  or they had an expert or an agent do that.

6        How did that change the course of the proceedings

7  here?  That's what I don't understand.

8        Because the judge wouldn't have seen that in

9  connection with the plea, and it seems as if your client

10  would not have been misled, because he actually had his own

11  expert who prepared a rebuttal report at the time, so I guess

12  I'm a little confused as to who was defrauded by the

13  Government's alleged fraud on the Court and how that led to

14  an improper plea.

15        MS. FREDERICK:  My client is the person who was

16  defrauded.  The Government's attorney delivered fraudulent

17  material, including calculations, to the attorney for the

18  United States in Judge Zagel's courtroom.  Those documents

19  stipulated or required Mr. Lopinski to stipulate that he was

20  guilty of deriving excess reimbursements from the public

21  limited partnership.

22        They then prepared and delivered their expert

23  witness opinion from Kroll Associates falsely confirming that

24  Mr. Lopinski had received $9.1 million in excess

25  reimbursements from the partnership.  Mr. Lopinski's expert

1    prepared an initial rebuttal, which pointed out the errors in

2    the Kroll report.  The U.S.A. verbally responded to

3    Mr. Lopinski that their expert, the Kroll report people,

4    agreed with Mr. Lopinski's expert and promised to provide

5    additional information.  They then did not provide, U.S.A.

6    did not provide that additional information despite the

7    numerous requests that they do so.

8         Mr. Lopinski's expert's supervisors -- he at the

9    time worked for a company that would not let him go further

10   until there had been a response to his initial report.

11   Mr. Lopinski was then sentenced without being supplied --

12   without his information being supplied, which was paramount

13   in establishing his innocence to the --

14        THE COURT:  I'm sorry.  So this is where I'm

15   starting to get confused.  You're saying that Mr. Lopinski's

16   information should have been supplied to the sentencing

17   judge?

18        MS. FREDERICK:  It should have been supplied -- it

19   should have been acknowledged and responded to by the U.S.A.,

20   by the U.S. Attorney's Office, because it directly

21   contradicted what Mr. Lopinski was being charged with.  And

22   that was an over-reimbursement.  Mr. Lopinski's expert's

23   opinion shows that there was no excess reimbursement.

24        And the Government actually agreed with

25   Mr. Lopinski's expert, but they never allowed that to get

1     before the court.

2           THE COURT:  So when did Mr. Lopinski and/or his

3     defense attorneys at the time receive the Government's

4     report?  Was it before or after his plea?

5           MS. FREDERICK:  As I understand it, it was during

6     the hearing --

7           THE DEFENDANT:  May I answer?

8           THE COURT:  You should probably not.  You should

9     probably consult with your lawyer before responding to those

10     questions, because this relates to the substance of the

11     charge, and you're represented by counsel, so I think it

12     would be better if there is something that you want to say

13     that you consult with her first to make sure that it's

14     appropriate.

15           MS. FREDERICK:  As I understand it --

16        (Brief pause.)

17           THE COURT:  Ms. Frederick, if you need to take a

18     moment to ask your client off to the side about the sequence

19     of events, that's fine.

20           MS. FREDERICK:  Just a moment.

21        (Brief pause.)

22           THE COURT:  Yes, Ms. Frederick.

23           MS. FREDERICK:  As I understand it, there was a

24     loss hearing after the plea agreement was entered, and that's

25     when the Government presented the Kroll report.

1    THE COURT:  So this is what I'm confused about

2    then.  If the report was not provided to Mr. Lopinski until

3    after he had pled guilty, then how could it have influenced

4    his decision to plead?

5    It sounds like your issue is with the sentence,

6    because there was something improper about the loss hearing,

7    not that there was something improper about the plea.

8    MS. FREDERICK:  Mr. Lopinski never agreed to plead

9    to the charges in the indictment.  He was pleading to

10   commingling, which is a prospective violation and not an

11   illegal matter.  The Kroll report was the Government's expert

12   opinion as to the direct charges that were against

13   Mr. Lopinski for misappropriating $9 million in investor

14   funds.

15   Mr. Lopinski's expert prepared a rebuttal report

16   saying that the calculations were wrong, and Mr. Lopinski

17   had, in fact, been under-reimbursed.  The Government's

18   attorney acknowledged that their expert agreed with

19   Mr. Lopinski's expert, but they never responded to the

20   rebuttal expert witness report.  And that cleared

21   Mr. Lopinski of any wrongdoing.

22   THE COURT:  Okay.  So Mr. Lopinski pled guilty to

23   two counts, Counts 5 and 6 of the indictment.  There are four

24   other counts of the indictment that cover other types of

25   conduct.

1    As I understand what happened, the Government, in

2  connection with the loss hearing, presented evidence that

3  would have related to all of the conduct, because at the

4  sentencing phase they can introduce relevant -- not

5  officially relevant conduct, but they can introduce more

6  information than just what's limited to those two counts.

7  And so that's what they did.

8    And in connection with doing that, your position is

9  they presented a false report, Mr. Lopinski's own expert said

10  this is false, the Government agreed, but they never

11  submitted the supplement.

12    MS. FREDERICK:  They never brought it to the

13  Court's attention.

14    THE COURT:  Okay.

15    MS. FREDERICK:  And the Government never responded.

16    THE COURT:  Are you asking me to find, if I had the

17  jurisdiction to do it, that Mr. Lopinski's plea to Counts 5

18  and 6 of the indictment should be vacated?

19    MS. FREDERICK:  Yes.  Yes, I am.  Because the

20  Government knew, had sufficient evidence that what they were

21  suggesting -- that what he was entering a plea agreement for

22  he had, in fact, not done.  And the Government was aware of

23  that, and they withheld that information from the loss

24  hearing.  And that information totally exonerates

25  Mr. Lopinski, so that plea should be vacated.

1   THE COURT:  Do you have an argument to present as

2   to why Mr. Lopinski stood in front of Judge Zagel and pled

3   guilty to Counts 5 and 6 if he didn't, in fact, violate those

4   statutes indicated in those counts?

5   I don't want to get into any details, but

6   oftentimes when people are saying my plea should be vacated,

7   they're making an argument based on voluntariness, or, you

8   know, there was something ineffective about counsel's advice.

9   I didn't see anything in your briefing to explain to me what

10  was wrong with the plea as to Counts 5 and 6, given at the

11  time Mr. Lopinski didn't have the offensive Government

12  report.

13  Was he misled by the Government in some way that

14  caused him to plead guilty to 5 and 6?  And if so, in what

15  way?

16  MS. FREDERICK:  I think it is paramount that the

17  plea agreement has not been produced.  I think the plea

18  agreement was very confusing, and Mr. Lopinski never thought

19  that he was pleading guilty to anything that was in the

20  indictment.  That's what he was led to believe.

21  THE COURT:  By his counsel?

22  MS. FREDERICK:  By the public defender.  Yes.

23  THE COURT:  Okay.  I think I have probably

24  exhausted the information that is available on this point at

25  this point, but Mr. Tzur, if you'd like to respond, I'll give

1    you an opportunity -- I think we're -- I know you weren't

2    there at the time either for the plea.  I have reviewed the

3    plea colloquy, I have seen the voluntary, you know,

4    acknowledgement of rights that, as I understand it, was not

5    signed by Mr. Lopinski, so I think I have an understanding of

6    that.  I reviewed the plea colloquy, so I think I understand

7    what happened at the plea hearing.

8            So if there is something you want to add as

9    rebuttal, and then I'll give Ms. Frederick the same

10    opportunity, and then I'll take things under advisement.

11            MR. TZUR:  I think I'm just going to be beating a

12    dead horse.  I like where it sounds your mind might be, that

13    you're skeptical about the substance of the defendant's

14    motion here, and in some ways I don't want to stop that flow

15    of that thought, but it still comes back to the

16    jurisdictional question, your Honor.  Especially in light of

17    the response to your question that the defense just gave

18    regarding whether they want you to vacate the judgment.  And

19    in light of the fact that they gave that same answer the last

20    time we were here.

21            That is the quintessential post-conviction habeas

22    motion.  That is a 2255 in federal court.  And we are not

23    there.  And because there would be a successive 2255, the

24    only way for Mr. Lopinski to get back into this court is to

25    first get through the Seventh Circuit.  And so your Honor

1    doesn't have jurisdiction to even consider the substance of

2    the motion, as meritless as I think it is, and as I think it

3    sounds like your Honor might be leaning toward.  I don't

4    think you can even get there.

5                THE COURT:  Ms. Frederick, do you have any final

6    things to add?

7                MS. FREDERICK:  Once again, we do not believe this

8    is a 2255 petition, nor should it be.  We believe it deals

9    with the inherit power of the court with regard to a fraud

10   that's been perpetrated on the court.  The United States

11   proceeded with an entry of a plea, a conviction, and a

12   sentencing when they had proof, and acknowledged they had

13   proof showing -- and agreed with the proof that showed that

14   my client had not been over-reimbursed.

15               For them to proceed to conviction and sentencing

16   with that information, it's a fraud on the court, and the

17   court has inherent powers to deal with a fraud, and to

18   investigate whether a judgment was obtained by fraud, and to

19   unearth the fraud, and to set aside any fraudulently-obtained

20   convictions.

21               And even where there is a plea agreement, where the

22   information shows that there was absolutely no basis to

23   convict my client, a fraud was perpetrated, not only on my

24   client but on the court, and I believe you have, under

25   several Supreme Court cases, Chambers versus Nasco, 501 U.S.

1  32, the court has inherent powers to address a fraud, a

2  conviction or judgment obtained by fraud.

3  THE COURT:  Okay.  So I'm going to take this under

4  advisement.  I want to put together what I hope will be a

5  succinct written ruling on it, in part because I want to

6  avoid someone down the road having to try to piece together

7  what I was thinking behind an oral ruling as I might be

8  trying to piece together what Judge Zagel was thinking, so I

9  think it's in the interest of efficiency ultimately for me to

10  take a little bit more time to formalize my thinking on this

11  and to put something down in writing for the parties.

12  I'll try to do that while it's fresh in my mind,

13  but I'm still going to put a status date on the calendar

14  which will ensure that if there are, to the extent there are,

15  further proceedings that need to happen in front of me, that

16  we have a date on the calendar.

17  So Enjoli, let's find such a date in early May.

18  THE CLERK:  May 3rd at 10:45.

19  THE COURT:  May 3rd, 10:45.  We may or may not need

20  the date but we'll have it.

21  Thank you for answering my questions.  I asked for

22  a lot of things that counsel here were not personally

23  involved in, so I appreciate your efforts to try to figure

24  out the answers to my questions.  Okay.  Thank you.

25  MR. TZUR:  Thank you, Judge.

1          MS. FREDERICK:  Thank you, your Honor.

2          THE COURT:  We're adjourned.

3       (End of proceedings.)

4               C E R T I F I C A T E

5

6       I certify that the foregoing is a correct transcript

7    from the record of proceedings in the above-entitled case on

8    April 5, 2018.

9

10

11

12   /s/Colette M. Kuemmeth___
        Court Reporter

13

14

15

16

17

18

19

20

21

22

23

24

25